1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9   MICHELLE LEE MAHAN,

10              Plaintiff,                    No. CIV S-06-2663 GGH

11          vs.

12   MICHAEL J. ASTRUE,                       ORDER
     Commissioner of
13   Social Security,

14
                Defendant.
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's application for Supplemental Security Income

18   ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons that follow,

19   plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross Motion for

20   Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

21   BACKGROUND

22          Plaintiff, born July 13, 1971, applied for disability benefits on September 30,

23   2003.[1]  (Tr. at 80-83.)  Plaintiff alleged she was unable to work since September 1, 2003, due to

24   depression, numbness in the hands and feet, and back pain.  (Tr. at 53.)  In a decision dated

25   _____

26          [1]  The ALJ's opinion gives an application date of September 18, 2003. (Tr. at 36.)

December 2, 2005, ALJ Robert P. Ryan determined that plaintiff was not disabled.[2]  (Tr. at 36-43.)  The ALJ made the following findings:

> 1.    The claimant has not performed substantial gainful activity since September 18, 2003.
>
> 2.    The medical evidence establishes that the claimant has severe status post L4-5 laminectromy, obesity, and left ankle sprain, but that she does not have an impairment, or combination of impairments, listed in or equivalent in medical severity to one listed in, Appendix 1, Subpart P, Regulations No. 4.
>
> 3.    The claimant's allegations are not credible.
>
> 4.    The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work, except: she can lift and carry up to twenty pounds occasionally and ten pounds frequently; she can stand/walk up to six hours in a workday; she can sit up

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

to six hours in a workday; she cannot climb ladders, ropes, and scaffolds; she can climb ramps and stairs occasionally; she can balance, stoop, kneel, crouch, and crawl occasionally (20 CFR § 416.945).

5. The claimant has no past relevant work.

6. The claimant's residual functional capacity for the full range of light work is reduced by the following limitations: she cannot climb ladders, ropes, and scaffolds; she can climb ramps and stairs occasionally; she can balance, stoop, kneel, crouch, and crawl occasionally.

7. The claimant is 34 years old, which is defined in the regulations as a "younger individual" (20 CFR § 416.963).

8. The claimant has an 11th grade education, defined in the regulations as "limited" (20 CFR § 416.964).

9. If the claimant had the residual functional capacity to perform the full range of light work, given her age, education, and work experience, section 416.969 of Regulations No. 16, and Rules 202.18 and 202.19, Table NO. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a finding that the claimant is not disabled.

10. The claimant's residual functional capacity for the full range of light work has not been significantly compromised by her additional nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decisionmaking, the claimant is not disabled.

11. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)).

(Tr. at 42-43.)

ISSUES PRESENTED

Plaintiff has raised the following issues: (A) Whether the ALJ Erred in Failing to Articulate Specific and Legitimate Reasons for Discrediting the Opinion of Dr. Kalman; and (B)

\\\\\

\\\\\

\\\\\

\\\\\

1   Whether the ALJ Erred in Mechanically Relying on the Medical Vocational Guidelines Despite

2   Plaintiff's Pain, and Numbness and Radiculopathy in Her Legs.[3]

3   LEGAL STANDARDS

4           The court reviews the Commissioner's decision to determine whether (1) it is

5   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

6   the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

7   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

8   Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

9   accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

10  1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

11  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

12  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

13  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

14  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

15  Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

16  ANALYSIS

17      A. Whether the ALJ Erred in Failing to Articulate Specific and Legitimate Reasons for

18  Discrediting the Opinion of Dr. Kalman

19          Plaintiff contends that the ALJ did not give adequate reasons to reject the opinion

20  of examining psychiatrist Dr. Kalman, and failed to obtain this doctor's underlying narrative

21  report before issuing his opinion.

22

23          [3]  The court is puzzled by plaintiff's failure to raise any issues with respect to an obesity
    analysis, which she prominently did in her appeal from the ALJ's decision to the Appeals
    Council.  (Tr. 15-18.)  While obesity is no longer a grounds for disability in a listing, it should be

24  analyzed at the various steps of the sequential analysis as it affects other maladies.  However,
    while at the administrative level, the disability finding process is non-adversarial, Reed v.

25  Massanari, 270 F.3d 838, 841 (9th Cir. 2001), such is not the case at the district court level.  The
    undersigned will not raise theories on his own, and will presume that the medical personnel did

26  take obesity into account in determining the residual functional capacity of plaintiff.

1
2
3
4
5
6

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. .... And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

7   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

8          In this case, the ALJ considered only this consultant's summation of records

9   statement and medical source statement concerning plaintiff's mental impairment.  (Tr. at 37-38,

10  187-91.)  The ALJ did not consider Dr. Kalman's narrative report which was written at the time

11  of this other documentation, and it was not included in the administrative transcript because it

12  was not submitted to the ALJ.  The ALJ gave little weight to Dr. Kalman's opinion because this

13  psychiatrist had seen plaintiff only once, because he did not provide any symptoms that would

14  limit plaintiff to the degree opined, and because plaintiff had not sought any mental health

15  treatment or similar treatment from her own primary care physician.  (Tr. at 38.)  The ALJ did

16  not find plaintiff's mental condition to be a severe impairment.  (Id. at 38.)

17         Instead, the ALJ relied on Dr. Behniwal's opinion.  This consulting psychiatrist

18  examined plaintiff with the benefit of some records on February 15, 2004. (Tr. at 137.)  On

19  testing, plaintiff could recall 3/3 objects after five minutes, she could do serial 3s, and she was

20  able to perform the requested functions for concentration, but her knowledge was below average.

21  (Id. at 139.)  She could perform simple calculations, however.  (Id. at 140.)  Plaintiff was

22  diagnosed with depressive disorder not otherwise specified, and a GAF of 55.[4]  Dr. Behniwal

23

24         [4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25  Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 51 to 60 indicates moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or
26  moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

1  concluded that plaintiff's problems seemed to be treatable and her prognosis for recovery in the

2  next twelve months was fair.  (Id. at 139-40.)   His functional assessment was that plaintiff could

3  do simple and repetitive tasks as well as detailed and complex tasks.  She could follow

4  instructions from supervisors and interact with coworkers and the public.  She could work on a

5  consistent basis without special or additional supervision.  She could maintain regular attendance

6  and complete a normal work week while dealing with the normal stresses of competitive work.

7  (Id. at 140.)

8          The portion of Dr. Kalman's findings which are contained in the transcript and

9  which were reviewed by the ALJ include a form assessing plaintiff's functioning.  He found that

10  she was not limited in maintaining socially appropriate behavior and being aware of normal

11  hazards and taking appropriate precautions.  (Id. at 190.)  She was mildly limited in her ability to

12  remember locations and work-like procedures, understanding, remembering and carrying out

13  short, simple and repetitive instructions, performing activities within a schedule, maintaining

14  regular attendance, sustaining an ordinary routine without special supervision, working near

15  others without distraction and without distracting coworkers, making simple work related

16  decisions, completing a normal work day and week at a consistent pace without interruptions

17  from psychological symptoms, interacting appropriately with the public, asking questions or

18  requesting assistance from supervisors, responding appropriately to changes in the work setting,

19  and traveling in unfamiliar places or using public transportation.  (Tr. at 188-90.)  Plaintiff was

20  moderately limited in understanding, remembering and carrying out detailed instructions,

21  maintaining concentration for extended periods, accepting instructions, responding appropriately

22  to criticism, setting realistic goals and making plans independently of others.  (Id.)  He added that

23  the limitations he set forth would increase plaintiff's level of impairment when the following

24  stressors were added: infrequent but demanding customers, production demands or quotas,

25  demand for precision, or a need for quick, accurate, and independent decisions in problem

26  solving on a consistent basis.  (Id. at 190.)  He added that plaintiff's symptoms were severe

6

1 │ enough to cause her to miss work three or four times per month, and that her current limitations

2 │ would be expected to last 12 continuous months. (Id. at 191.)

3 │       Plaintiff has attached Dr. Kalman's narrative report to her motion as it is not

4 │ contained in the transcript.  She contends this report was raised at the hearing, was referred to in

5 │ Dr. Kalman's summation of records statement, and that the ALJ knew it was forthcoming; yet he

6 │ issued his decision without receiving it first.  See tr. at 197-98, 219, 187.

7 │       As a preliminary matter, although plaintiff claims that the ALJ failed in his duty to

8 │ properly develop the record by not waiting to include the missing report, it should be noted that

9 │ plaintiff was represented by counsel at the hearing, and therefore has no excuse for failing to put

10 │ the report before the ALJ in a timely fashion.  The hearing was on August 11, 2005, at which

11 │ time plaintiff's counsel indicated this report would be filed within two or three weeks. (Id. at

12 │ 198.)  The ALJ issued his decision on December 2, 2005, giving plaintiff's counsel over three

13 │ and almost four months to submit this report.[5]  The report was not submitted until plaintiff filed

14 │ her summary judgment motion on August 13, 2007.  The ALJ committed no error in this regard.

15 │       Furthermore, plaintiff has not provided sufficient reason for providing this belated

16 │ report at the present time.[6]  Because plaintiff did not provide this evidence within the time period

17 │ represented at hearing, and waited over two years to bring it to anyone's attention, it can be

18 │ viewed as an attempt to submit new evidence.

19 │       A federal district court should remand a case to the Commissioner to consider

20 │ material new evidence if good cause exists for its absence from the prior record.  42 U.S.C. §

21 │ 405(g); Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).

22 │ \\\\\

23 │

---

24 │     [5]  The narrative report is also dated August 7, 2005, the same date as the summation of records statement and the medical source statement.  ((Tr. at 187-91, Pl.'s Ex. A.)

25 │

26 │     [6]  Plaintiff concedes it is her responsibility to provide evidence to support her claim. (Pl.'s Reply at 2:14-15.)

1      New evidence is "material," if the court finds a reasonable possibility that

2   considering the evidence would have changed the disability determination.[7]  See Booz v.

3   Secretary of Health and Human Services, 734 F.2d 1378, 1380-1381 (9th Cir. 1984).  Unless it is

4   probative of plaintiff's condition *at or before the disability hearing*, new evidence is not

5   material.  See 42 U.S.C. § 416(i)(2)(G); Sanchez v. Secretary of Health and Human Services, 812

6   F.2d 509, 511-12 (9th Cir. 1987) (holding that new evidence was not material because it related

7   to a medical condition not significantly at issue at time of hearing).[8]

8      "Good cause" requires more than "simply . . . obtaining a more favorable report

9   from an expert witness once [a] claim is denied.  The claimant must establish good cause for not

10   seeking the expert's opinion prior to the denial. . . ."  Clem v. Sullivan, 894 F.2d 328, 332 (9th

11   Cir. 1990) (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985).  For example, good cause

12   exists if new evidence earlier was unavailable.  Embrey v. Bowen, 849 F.2d 418, 423-24 (9th

13   Cir.1988).

14      Plaintiff has not met the good cause standard required for submitting this belated

15   evidence.

16      In any event, even if the belated report is considered, the ALJ gave specific and

17   legitimate reasons to give less weight to Dr. Kalman's opinion.  This report is in part directly

18   contrary to Dr. Behniwal's evaluation in stating that the mental assessment indicated plaintiff

19   could not recall any object after five minutes, she could state four digits forward but only three

20   digits backward, she could not perform serial 3s, and she could not add, subtract, or multiply.

21   She could spell the word "world" backwards.  Similar in part to Dr. Behniwal's findings, Dr.

22   \\\\\

23

24      [7] Evidence is not deemed immaterial solely by the date it was created.  Later dated evidence may have substantive impact on a preceding period.

25      [8] When new evidence reflects plaintiff's current condition but is not probative of a
    condition at the time of the initial determination, the correct procedure is to reapply for benefits.
26   See Ward v. Schweiker,  686 F.2d 762, 765-66 (9th Cir.1982).

8

1    Kalman also found plaintiff's intelligence to be below average,[9] and her GAF was 55.  Plaintiff's

2    mood was depressed and affect constricted.  (Pl.'s Ex. A.)  Plaintiff's thought was logical and

3    directed.  There was no looseness of associations or mood swings.  Dr. Kalman diagnosed

4    "adjustment disorder, depressed, chronic, secondary to general medical condition," and

5    borderline intellectual functioning.  (Id.)

6            Between the two psychiatrists, plaintiff saw each one time.  There was no reason

7    to give Dr. Kalman greater weight.  The ALJ also correctly noted that plaintiff had not sought

8    mental health treatment, either from a specialist or from her family doctor.

9            The differences between Dr. Behniwal's opinion and that of Dr. Kalman are either

10   contradictory, in which case it was the ALJ's province to rely on Dr. Behniwal's report, or they

11   were consistent, such that the failure to consider Dr. Kalman's belated report was harmless.[10]

12   Both of these reports should be given similar weight, as based on one-time evaluations of

13   plaintiff.  Therefore, it was within the ALJ's province to chose to rely on one consultant over

14   another.  He gave specific and legitimate reasons in rejecting the opinion of Dr. Kalman, properly

15   following the standards set forth in Lester.

16           Furthermore, the belated narrative evaluation is the underlying report for the

17   medical source statement which *was* considered by the ALJ and which contained the functional

18   impact of the narrative opinion, and therefore the substance of Dr. Kalman's opinion.  Plaintiff

19   concedes in her reply that the narrative report is consistent with Dr. Kalman's medical source

20   statement.  (Pl.'s Reply at 2:8-11.)

21           Moreover, the ALJ was not required to credit the portion of Dr. Kalman's opinion

22   finding that plaintiff would not be able to complete a workday more than three or four times per

23   _____

24       [9]  Dr. Behniwal found plaintiff's fund of knowledge to be below average, but did not
     make a specific finding as to her intelligence.  (Tr. at 139.)

25

26       [10]  An error which has no effect on the ultimate decision is harmless.  Curry v. Sullivan,
     925 F.2d 1127, 1121 (9th Cir. 1990).

1   month.  "A statement by any physician that the claimant is disabled or unable to work is a

2   conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his

3   determination as to whether the claimant is disabled within the meaning of the [Act]."  Murray v.

4   Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir.

5   1988)), 20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen, 881 F.2d 747, 750-

6   51 (9th Cir. 1989).

7            The ALJ's decision in regard to mental impairment is also supported by the SSA

8   findings on the Psychiatric Review Technique Form.  Dr. Morando found that although plaintiff

9   had depressive disorder, NOS, she had no severe impairment.  (Tr. at 141, 144.)  He found only

10  mild limitations in activities of daily living, maintaining social functioning, and maintaining

11  concentration, persistence, and pace.  (Id. at 151.)  This report was based on a consult dated

12  March 27, 2004, which noted that plaintiff's initial application for disability made no claim for

13  mental impairment, there was no history of psychiatric treatment, plaintiff was not taking any

14  psychiatric medication, there was no significant psychopathology other than mild depressive

15  disorder, NOS, and she had no significant limitation.  (Id. at 157.)

16           The ALJ's reasons for rejecting Dr. Kalman's opinion are specific and legitimate

17  and supported by the record.

18       B.  Whether the ALJ Should Have Used the Testimony of a Vocational Expert

19           Plaintiff next contends that the ALJ should have utilized a vocational expert[11]

20  based on pain, numbness and radiculopathy in her legs.[12]

21           The Guidelines in table form ("grids") are combinations of residual functional

22

23       [11]  The ALJ did obtain vocational testimony at the hearing, but later determined that
     reliance on the grids was appropriate.  The expert found that plaintiff could do one job with the
24   limitations of numbness in the hands, feet, and legs, as well as the other limitations: surveillance
     system monitor.  (Tr. at 215-19.)  Plaintiff does not complain that she has numbness in her
25   hands.

26       [12]  Plaintiff also mentions in passing without specifically raising, that she reported
     migraines and was treated for headaches.  Pl.'s Mot. at 10:9.

1    capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the

2    grids determine if other work is available.  See generally Desrosiers v. Secretary of Health and

3    Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

4            The grids may be used if a claimant has both exertional and nonexertional

5    limitations, so long as the nonexertional limitations do not significantly impact the exertional

6    capabilities.[13]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other

7    grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).  See Desrosiers, 846 F.2d

8    at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude

9    application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996).  The ALJ

10   must weigh the evidence with respect to work experience, education, and psychological and

11   physical impairments to determine whether a nonexertional limitation significantly limits

12   plaintiff's ability to work in a certain category.  Desrosiers 846 F.2d at 578 (Pregerson, J.,

13   concurring).  "A non-exertional impairment, if sufficiently severe, may limit the claimant's

14   functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines

15   would be inapplicable."  Desrosiers, 846 F.2d at 577-78.  The ALJ is then required to use a

16   vocational expert. Aukland v. Massanari, 257  F. 3d. 1033 (9th Cir. 2001).

17           In this case, the ALJ relied on the grids to determine that plaintiff could do

18   sedentary or light work.  He imposed the following limitations which he found left the sedentary

19   and light occupational base virtually intact: "she can lift and carry up to twenty pounds

20   occasionally and ten pounds frequently; she can stand/walk up to six hours in a workday; she can

21

22       [13]  Exertional capabilities are the "primary strength activities" of sitting, standing,
     walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10,
23   Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities
     include mental, sensory, postural, manipulative and environmental matters which do not directly
24   affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary;
     Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a
25   claimant has an impairment that limits his or her ability to work without directly affecting his or
     her strength, the claimant is said to have nonexertional (not strength-related) limitations that are
26   not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

1  sit up to six hours in a workday; she cannot climb ladders, ropes, and scaffolds; she can climb

2  ramps and stairs occasionally; she can balance, stoop, kneel, crouch, and crawl occasionally."

3  (Tr. at 41, 42.)  This finding was for the most part based on the assessment made by Dr. McIntire

4  who found that plaintiff could lift twenty pounds frequently and forty pounds occasionally, and

5  could stoop occasionally.  He imposed no other limitations.  (Tr. at 162-63.)  These limitations

6  were based on loss of range of motion of the lumbar spine.  Although plaintiff previously had a

7  laminotomy and discectomy on June 25, 2002, Dr. McIntire noted a lack of motor or sensory

8  radicular findings on the examination.  He also reported a lack of paraspinal muscle spasm and

9  tenderness on palpation, as well as negative straight leg raising and Lasegue bilaterally.  Patrick's

10  sign was negative bilaterally and there was no guarding when plaintiff was seated.  (Id. at 162.)

11     Plaintiff attempts to show that evidence of mild postoperative scarring at L4 and 5

12  support her alleged symptoms.  (Id. at 116.)   The scarring shows only that plaintiff had prior

13  surgeries, which is not disputed, and that the scarring enveloped the L5 nerve roots.  It does not

14  support plaintiff's claims of current problems.  The MRI to which plaintiff refers also indicates

15  that the L5-S1 disc is normal with moderate bilateral facet degenerative changes.  At L4-5, the

16  MRI showed a mild decrease in height and moderate decrease in signal intensity.  (Id.)  These

17  findings do not support the degree of limitation alleged by plaintiff.

18     Plaintiff's medical history in regard to back and lower extremity problems does

19  not support her claim that the grids should not have been used.  For example, her neurosurgeon,

20  Dr. Gregorius, noted that she had some pain down her left leg after the laminotomy and

21  discectomy; however, it was not as bad as before the surgery.  (Tr. at 119.)  This doctor found no

22  further nerve root compression at L4-5.  He told plaintiff that continuation of her back exercises

23  would help her.  (Id. at 115.)  He also noted that she had 5/5 motor strength in January, 2003. (Id.

24  at 118.)

25     As to pain in the ankles, Dr. Eibling diagnosed a left ankle sprain.  (Id. at 123.)

26  X-ray of that ankle was negative, but an ankle brace was prescribed, with the notation, "nothing

1  else to offer her." (Id. at 134.)  A consultant on November 18, 2003 noted that although plaintiff

2  complained of pain and numbness in her feet, "this lady can still take her children to school and

3  do some housework such as laundry and dishes." (Id. at 136.)  The ALJ made note of these

4  reports, and concluded that mild scarring of a discrete nerve root could not cause numbness in an

5  entire limb. (Id. at 39, 40.)  Furthermore, the ALJ found plaintiff to be not credible, and plaintiff

6  has not contested this finding. (Tr. at 42.)

7          Plaintiff also claims that she reported headaches and was treated for them;

8  however, the ALJ explained that plaintiff had not complained of headaches to any physicians,

9  despite her claims of migraines every two to three days. (Pl.'s Mot. at 10:9; tr. at 41.)  There is

10  only one note in the record, plaintiff's subjective statement that she gets "bad migraines."  She

11  did not receive a diagnosis or treatment at this time, however. (Id. at 130.)  As noted by the ALJ,

12  more than a notation in the medical records would have been expected if the headaches were of

13  this frequency. (Tr. at 41.)  Plaintiff's own medication report and medical record report do not

14  list medicine or treatment for headaches. (Tr. at 87, 101.)

15          The ALJ properly relied on the grids as plaintiff's non-exertional impairments

16  were not significant enough to warrant resort to a vocational expert.

17  CONCLUSION

18          Accordingly, the court finds the ALJ's assessment is fully supported by

19  substantial evidence in the record and based on the proper legal standards.  Plaintiff's Motion for

20  Summary Judgment is denied, the Commissioner's Cross Motion for Summary Judgment is

21  granted, and the Clerk is directed to enter judgment for the Commissioner.

22  DATED: 12/20/07

                                    /s/ Gregory G. Hollows
23
                                    _____
                                    GREGORY G. HOLLOWS
24                                  U.S. MAGISTRATE JUDGE

    GGH/076/Mahan2663.ss.wpd
25

26

                                        13